## City of Owensboro v. Winfrey, et al.
## Owensboro City Railroad Company v. Same, et al.

(Decided March 25, 1921.)

### Appeals from Daviess Circuit Court.

1. Negligence—Contributory Negligence.—Ordinarily the issue of contributory negligence is one to be determined by the jury under appropriate instructions, but where the facts are uncontroverted and there is no room for reasonable difference of opinion and but one conclusion may fairly be drawn therefrom, the court may and it is its duty to pass upon it as a matter of law; and this rule prevails in accidents produced by electricity the same as in those produced by other causes.

2. Negligence—Contributory Negligence.—To charge one with contributory negligence it is not necessary that he should have knowledge of, and appreciate the extent of, the danger, it being sufficient if under the facts he, in the exercise of ordinary care, must have known and appreciated that some danger and some possible injury would result from his act.

3. Damages—Contributory Negligence.—This action was brought to recover damages for death produced by an electrical shock growing out of electric light wires crossing and obstructing the public road: Held that under the evidence as set out in the opinion the deceased was guilty of such contributory negligence as to defeat the cause of action.

E. B. ANDERSON for appellant, Owensboro City R. R. Co.

LA VEGA CLEMENTS for appellant, City of Owensboro.

BIRKHEAD & WILSON and T. F. BIRKHEAD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing the judgment in the first case, granting an appeal and reversing the judgment in the second case, and affirming the judgment on the cross appeal.

On the morning of August 27, 1918, between 8:30 and 9:00 o'clock Martin Winfrey, a colored man about 61

years of age, received an electrical shock resulting in his death and this suit was filed by the appellees, his widow and children, against the City of Owensboro, Owensboro City Railroad Company, Henry S. Berry and the administrator of the deceased, seeking to recover damages for his death against all of the defendants expect the administrator, it being alleged that he declined to institute the suit and for that reason he was made a defendant. The defendants, other than the administrator, filed separate answers denying the negligence alleged in the petition and each of them pleaded contributory negligence on the part of the deceased and in a third paragraph, relied upon a written compromise agreement made with the administrator, the widow and some of the children, whereby the defendant, City of Owensboro, paid in full settlement of all damages against all persons concerned the sum of $300.00. Appropriate pleadings filed by plaintiffs denied the alleged contributory negligence and sought to avoid the compromise upon the ground that when it was executed the administrator, widow and children were not aware of the facts concerning the accident resulting in the death of the deceased and did not understandingly execute it and it was therefore insisted that it was not binding; but there was no tender of, or offer to return, the sum paid as a compromise or any part of it. The averments of plaintiffs in avoidance of the compromise settlement were denied and upon trial the jury returned a verdict in favor of the defendant Berry, but returned one against the city of Owensboro for the sum of $750.00, and one against Owensboro City Railroad Company for the sum of $250.00. Each of the defendants against whom verdicts were returned filed motions for a new trial, which were overruled, and judgment was pronounced against each of them, but no credit was given for the amount paid in the compromise settlement. To reverse the judgment against it the city of Owensboro has prosecuted an appeal and the Owensboro City Railroad Company has entered motion in this court for an appeal from the judgment against it, and plaintiffs have obtained a cross appeal against the defendant Henry S. Berry.

The accident resulting in decedent's death was a most peculiar one and the undisputed testimony shows that it happened in this way: The deceased at the time of the accident was employed by a man named Rudy to haul

coal from a coal mine situated not far from the city of Owensboro, and in doing so he traveled a portion of the way over a public road in Daviess county, known as the Ewing road, which runs north and south and it comes into another public road in the county, known as West Main street extended, at a point about a mile and a half from the corporate limits of the city of Owensboro. A Mr. Heady was hauling coal for another at the same time and from the same mine, and on the morning of the accident Heady was driving in front with his wagon and the deceased following with his wagon immediately in the rear of Heady's. When they arrived at the point where the Ewing road comes into Main street extended they discovered that a pole upon which was strung two electric wires that went into the residence of the defendant Berry, had been blown down the night before and was across the mouth of Ewing road and each of them was about 12 or 15 inches from the ground. Both of the drivers stopped and Heady procured an old cross tie off the right of way of the defendant Owensboro City Railroad Company, which ran along by the public road, and placed it on its end a few feet from the wires and then let the tie fall across the wires so as to press them to the ground, which was muddy from a rain which fell the night before, and this created what the witnesses called "a spurting noise" as the wires came in contact with the muddy road. As the tie fell it separated the wires some 4 or 4½ feet apart and about the same distance as that between the fore wheels and the hind wheels of an ordinary road wagon. Heady then took his scoop and commenced to cover up the wires with mud procured from the surface of the road and called upon the deceased to assist him in doing so. The latter at first declined upon the ground that he was afraid he would be shocked and injured, but later he concluded otherwise and took his scoop and assisted Heady in constructing two ridges over the two wires, which, according to the witnesses, were "about the size of a potato ridge." In the meantime other parties came up and warned both Heady and the deceased of the danger of undertaking to cross the wires even in their covered condition, but Heady, who was in front, disregarded the warning and undertook to drive his team across the ridges and when the fore wheels of his wagon went upon the first ridge, it being very soft and muddy, they pressed down through the ridge to the covered wire and caused the team to be shocked and it gave a lunge

or jerk which put the front wheels on the next wire and the hind wheels on the first wire, and the wagon as well as the harness upon the team became charged from the covered live wires, but Heady managed to jump out without being injured. He immediately called to the deceased to assist him in unhitching the team, which was plainly undergoing a severe shock, but some of the parties present again warned the deceased not to do so, which warning he declined to heed, and as he approached Heady's team from one side the latter received a shock on the other side in his effort to unhitch the team from that side, and deceased immediately thereafter took hold of the traces on his side, receiving the shock which caused his death. It further appeared that before the parties undertook to cross the wires a witness, not only informed Heady and the deceased of the danger in crossing the wires, but further stated that she would go to the house of Mr. Berry, which was nearby, and telephone the electric company to turn off the current; but, before she could do this the accident occurred as above outlined.

The first question, therefore, is did the court err in overruling the motion of each of the appellants made at the close of plaintiffs' testimony, and also at the close of all the testimony, to direct a verdict in their favor upon the grounds of (1), that the decedent was guilty of such contributory negligence as to defeat this suit brought to recover damages for his death alleged to be due to the negligence of the defendants, and (2), that the testimony failed to show any legal grounds in avoidance of the compromise settlement hereinbefore referred to?

In order to arrive at a true and just conclusion with reference to ground (1) we have not only closely studied the record and briefs of counsel, but have devoted considerable time in the investigation of the question as it has been treated and disposed of by the various courts of the country. This study and investigation have led us to the conclusion that there can be no doubt that the deceased under the facts of this case was guilty of such contributory negligence as necessarily defeats a recovery. The adjudicated cases, as well as text writers, all agree that the handlers of electricity are required to exercise the highest degree of care and diligence to prevent the dangerous commodity which they handle from inflicting injury to others, and this degree of care is specially impos-

ed upon them to see to it that the public highways, on which their wires may run or over which they may cross, shall be free from such dangers and constantly safe for the use of the traveling public.   But, all of this, however, bears upon and relates exclusively to the negligence of the defendants and does not affect the contributory negligence of the person injured, since the elements of contributory negligence and the facts necessary to create it in such cases are the same as exist in accidents produced by other agencies than that of electricity.   Ordinarily the question of contributory negligence is one to be submitted to the jury under appropriate instructions, but where the facts are uncontroverted and there is no room for reasonable difference of opinion, and but one conclusion may fairly be drawn therefrom, the court not only has the right but it is its duty to determine the question as a matter of law and instruct the jury accordingly. The right as well as the duty of the court in this regard has been upheld by this court in many cases, two comparatively late ones being Hayden v. Chicago M. & G. R. Co., 160 Ky. 836, and Wiley v. C. N. O. & T. P. R. R. Co., 161 Ky. 305.   That the rule is the same when applied in actions to recover for injuries produced by electricity may be seen from 10 American and English Encyclopedia of Law, second edition, page 873; note on page 589 to the case of Denver Consolidated Electric Co. v. Simpson, 31 L. R. A. 566; 9 R. C. L. 1202; note to the case of Hebert v. Lake Charles Ice, etc., Co., 100 A. S. R. 527, and Curtis' Law of Electricity, page 791.   The same rule was also recognized by this court in the case of Lewis' Admr. v. Bowling Green Gas Light Co., 135 Ky. 611.   In that case the deceased took hold of a loose and sagging wire at the side of the road so as to remove it as a probable danger to some traveler on the highway.   He received the shock which killed him, but he did not know that the wire was alive nor did he have any reason to believe that it was so.   On the contrary the facts appearing, as related in the opinion, were that he had reasonable grounds to believe that it was not charged at the time. The court held that under the circumstances the deceased was not guilty of contributory negligence as a matter of law, but said: "If the decedent knew that was a live wire, and knew of the danger of touching it as he did, the act would be undoubtedly negligence on his part which would defeat a recovery for his injury."   The general doctrine of

contributory negligence in this character of cases is discussed in a note on page 1177 to the same case of Lewis' Admr. v. Bowling Green Gas Light Co., reported in 22 L. R. A. (N. S.) page 1169, and note on page 916 to the case of Diller v. Northern California Power Co., reported in 1913D, Annotated Cases, page 908.

From the numerous cases cited in those notes it will be seen that many of them turn on the age and intelligence of the person injured, it being quite universally held that one under the age of 14 years will be *prima facie* presumed not chargeable with contributory negligence, but even that presumption favoring the indiscretions of youth may be overcome. Stark v. Muskegon Traction and Lighting Co., 1 L. R. A. (N. S.) 822, and Johnson v. New Omaha, etc., Electric Co., 17 L. R. A. (N. S.) 435. In those cases youths under 14 years of age voluntarily came in contact with what they knew to be charged wires, and not as a result of any attractive nuisance, and when they knew that such contact would produce a shock but, perhaps, miscalculated the extent of the injury which it might produce. The court in each case held that the deceased, being a person of intelligence and aware of all the facts constituting the danger, by voluntarily touching the wire, so far contributed to their deaths as to prevent a recovery therefor.

In the case before us there exists no fact which would, under the doctrine of any case coming under our observation, relieve the deceased of the charge of contributory negligence so as to defeat a recovery herein. There is no fact about which reasonable men might entertain different opinions entering into the consideration of, or in anywise affecting, the question. The deceased knew that the wires were charged and were, therefore, dangerous and in assisting to cover them he was engaged in an act to make them safe for the purpose of being driven over. The evidence is quite conclusive that he had witnessed a shock received by Mr. Heady and, as we have seen, he expressed a fear in assisting Heady to cover the wires at the time the latter received his first shock. He was warned by at least one witness, and perhaps two, of the danger in attempting to cross the wires and also of the danger in attempting to unloose the team of Heady from the wagon. But it is argued that while he might have known of the danger in coming in contact with the wires he did not know or appreciate the danger of their

charging or distributing a current over the wagon and also charging the harness on the team drawing it. But his engaging in covering the wires refutes this contention, for that act was necessarily for the accomplishment of only the one purpose of preventing the live wires from coming in contact with the wheels of the wagon and distributing the current in such a way as to endanger either the driver or the team, or perhaps both. He saw, after Heady's wagon got upon the wires, that the same result had happened that would have happened if no dirt had been thrown upon them, and besides, as we have said, he was expressly warned not to do the act which he undertook and in the attempted performance of which he sustained the shock which produced his death.

The text in the Law of Electricity, by Curtis, to which we have referred, on page 800, in stating the rule, as applying to facts almost similar to those we have here, says: "If, however, the wire in a highway is charged with a deadly current of electricity and the traveler has actual knowledge of such a condition or in the exercise of due care would have had actual knowledge thereof, he is not justified in attempting to drive over or near to the wire. Great care and caution are required of a driver who knows the presence of a dangerous condition in a public highway." Under the facts of this case there can be no different effect upon the plea of contributory negligence where Heady's wagon attempted to cross the wires instead of that of the deceased, since he knew the facts which produced the danger to Heady's wagon the same as if the danger had been produced to his wagon.

It seems to us that if there could possibly be a case where one could be guilty of contributory negligence in an accident produced by coming in contact with an electrical current, this is one of them. The deceased was, as we have seen, of mature age and possessed more than ordinary intelligence. He had lived and worked in the city of Owensboro for a number of years, where electricity was distributed over wires and used by the members of the public generally. He knew that the wires on this particular occasion were charged with the electrical current and he knew the danger in coming in direct contact with them and also the danger of a wagon coming in contact with them, as is proven by his effort to remove the danger by covering the wires; and, added to all this, he was expressly warned of the danger and advised not to risk

it.   He saw that Heady's team was in the throes of a severe shock and in the light of his prior participations it would be folly to say that he did not know of, or appreciate the cause which, produced that effect. In so concluding it is not necessary for it to appear that the deceased appreciated the full extent of the danger or the result which actually happened. It is sufficient for the purpose that he knew there was a probability of some danger, for as said in 9 R. C. L., *supra*, ''Suspicion, entertained by a person of a suitable age and reasonable discretion, that a fallen wire is charged with electricity, should induce him to shun, if possible, the surmised peril, for the rule of law is that one who voluntarily assumes a position of danger, the hazards of which he understands and appreciates, can not recover for an injury from a risk incident to the position,'' although the risk is greater than he anticipated or the hazard greater than he appreciated.   Also in the Law of Electricity by Curtis, *supra*, page 807, it is said: ''A person, knowing that an appliance is charged with electricity and will give a shock if contact is made therewith, must not trifle with the appliance.   If he deliberately touches it and is killed or receives a serious injury, it can not be said in extenuation of his conduct that the danger of the appliance was greater than he anticipated.''   See also case of Johnson v. Omaha, etc., Electric Co., *supra*.

In the discussion so far, we have assumed that the negligence alleged in the petition was the proximate cause of the injury sued for and have not taken into account the intervening agency created by knowingly bringing Heady's wagon in contact with the live wires.   Whether, therefore, the negligence of the defendants was the proximate cause of the decedent's death, or whether such result, produced and brought about in the manner shown, was reasonably to be anticipated by the defendants, are questions not determined; nor, in view of the conclusions reached, have we thought it necessary to either discuss or dispose of the issues relative to the compromise agreement.   For the same reason we have refrained from considering other questions relating to the introduction of evidence and instructions to the jury.

For the reasons indicated the judgment against the city of Owensboro is reversed, and the motion of Owensboro City Railroad Company for an appeal is sustained, the appeal granted and the judgment against it is reversed; also the judgment in favor of the defendant Berry,

the correctness of which is questioned on the cross appeal, is affirmed. The court upon a return of the case will set aside the judgments in favor of plaintiffs and grant the defendants therein a new trial and proceed according to the principles of this opinion.