## BARNETT v. DES MOINES ELECTRIC CO.

(Circuit Court of Appeals, Eighth Circuit. December 9, 1925.)

No. 6887.

1. **Electricity** ⬤⟞18(1)—**Person, knowing danger, negligent in coming in contact with electric wire.**

General rule is that person with knowledge of dangerous character of electric wire, purposely coming in contact therewith, is contributorily negligent, precluding recovery.

2. **Electricity** ⬤⟞18(1)—**Handling broken electric wire held contributory negligence.**

Where plaintiff, with knowledge of danger, took hold of broken electric wire lying in street, using napkin as insulator, in order to remove it, when there was no imminent danger to others, *held*, that finding that he was contributorily negligent as matter of law was not erroneous.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action by William T. Barnett against the Des Moines Electric Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Thomas A. Cheshire, of Des Moines, Iowa (C. C. Putnam, of Des Moines, Iowa, on the brief), for plaintiff in error.

Charles S. Bradshaw, of Des Moines, Iowa (Casper Schenk and Rex H. Fowler, both of Des Moines, Iowa, on the brief), for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. William T. Barnett (hereinafter called plaintiff) brought this action against the Des Moines Electric Company (hereinafter called defendant) to recover damages for personal injuries.

The plaintiff was a resident of 1829 Mondamin avenue, Des Moines, Iowa. On August 11, 1923, at about 7:30 o'clock p. m., the electric lights in plaintiff's house went out, while he was eating his evening meal. He immediately got up and went out to the sidewalk in front of his house. Mondamin avenue runs east and west. The plaintiff's house was on the north side of the avenue, facing the south. The electric light wires of the defendant ran along the south side of the avenue. When plaintiff came out, one Mrs. Markley was sitting in a rocking chair on the sidewalk in front of her home, which was located on the north side of the avenue immediately west of plaintiff's house. Across the avenue from plaintiff's home, the wires passed through a tree, situated about 44 feet distant from the nearest electric light pole on the west and about 67 feet distant from the nearest electric light pole on the east. One of the wires had broken, and one end, about 67 feet in length, attached to the east pole, had fallen across the pavement and doubled back in a sort of semicircle. The plaintiff noticed this wire lying in the street. East of the plaintiff, a distance of 25 to 30 feet, six or eight children were playing in the street. Plaintiff requested Mrs. Markley to get him some old rags, so that he might remove the wire and prevent the children from being burned. Mrs. Markley went into the house. Without awaiting her return, plaintiff folded a napkin which he had carried with him from the supper table, stepped off of the curb onto the pavement, and placed the napkin over the wire near the end. After testing the wire with his fingers, he seized the wire where he had placed the napkin about it, and started to carry it across the avenue, intending to wind it around the pole and up off of the ground. At the time plaintiff picked up the wire, the children were off a distance of 25 or 30 feet. Before touching the wire, the plaintiff had noticed a glow at the bottom of the east pole, to which the other end of the wire was fastened. As plaintiff carried the wire it emitted sparks and flashes, and made considerable noise whenever it touched the ground. When plaintiff reached the curbing on the opposite side of the avenue—the south side—and stepped onto the parking, he received an electric shock which knocked him down, and the electric current passed through his body, and severely burned his hands, body, and lower limbs. For these injuries he sought to recover damages in this action.

Plaintiff testified that his reason for attempting to remove the wire was his fear that the children would come in contact with it and be burned and injured. At the time he took hold of the wire he knew it was an electric light wire, and apprehended that it was dangerous. He relied upon the napkin to protect him. On this point he testified:

"I thought that the napkin was a suffi-

cient protection for my hands. I thought I might get my fingers burned if I took hold of it with bare hands, and that the children might get burned if they got on it. I did not want to get burned, and exercised care all the way through to use the napkin. When I used both hands, I looked to see that I was placing both of them on the napkin. I relied upon the napkin to protect me from the current."

At the time of the accident, plaintiff was 42 years of age, and a man of considerable experience and travel. He had a public school education and had also taken a six months' business course in Spencer University. He had resided during different times at Birmingham, Mobile, Evansville, Kansas City, Missouri, Atlanta, Indianapolis, Grand Rapids, Terre Haute, Philadelphia, and Des Moines.

Plaintiff charged in his petition that the defendant was negligent in the maintenance of its electric wires, in failing to trim the trees so as to keep the branches from rubbing the wires and causing them to break, in failing to keep the wires properly insulated, and in failing to give warning of the danger from the high voltage carried through the wires.

In its answer defendant denied its negligence and set up a plea of contributory negligence.

At the close of plaintiff's evidence on motion of the defendant, the court directed a verdict in favor of the defendant upon the ground that the plaintiff was guilty of contributory negligence as a matter of law. Judgment was entered accordingly, and from that judgment this writ of error was sued out.

[1] It is well settled as a general rule that, where a person with knowledge of the dangerous character of an electric wire purposely comes in contact with it, he is guilty of contributory negligence and cannot recover for the resulting injury. Morris v. Kansas City Light & Power Co., 302 Mo. 475, 258 S. W. 431; Croteau v. Twin State Gas & Electric Co., 79 N. H. 515, 112 A. 397; Billington v. Eastern Wisconsin Ry. & Light Co., 137 Wis. 416, 119 N. W. 127; Glander v. Milwaukee Electric Ry. & Light Co., 155 Wis. 381, 144 N. W. 972; McNamee v. Western Union Teleg. Co., 140 App. Div. 874, 125 N. Y. S. 622; Id., 160 App. Div. 785, 145 N. Y. S. 981; Frauenthal v. Laclede Gas Light Co., 67 Mo. App. 1; Shade et al. v. Bay Counties Power Co., 152 Cal. 10, 92 P. 62; City of Owensboro v. Winfrey et al., 191 Ky. 106, 229 S. W. 135; Capital Gas & E. L. Co. v.

Davis' Adm'r, 138 Ky. 628, 128 S. W. 1062; Druse et al. v. Pacific Power & Light Co., 86 Wash. 519, 150 P. 1182; Williams et al. v. Metropolitan Edison Co., 267 Pa. 158, 110 A. 92; Haertel et al. v. Pennsylvania Light & Power Co., 219 Pa. 640, 69 A. 282, 9 R. C. L. p. 1202, § 14; 20 C. J. p. 375.

[2] Counsel for plaintiff assert that the above rule is limited by the principle that where a person seeks to rescue another from imminent danger, and in the effort imperils his own life, he is not as a matter of law guilty of contributory negligence, unless his act is so rash and reckless that a person of ordinary prudence would not undertake it. They contend that the facts in this case bring it within the above principle and in support thereof cite the following cases: Eckert v. L. I. R. Co., 43 N. Y. 502, 3 Am. Rep. 721; Pennsylvania Co. v. Langendorf, 48 Ohio St. 316, 28 N. E. 172, 13 L. R. A. 190, 29 Am. St. Rep. 553; Pittsburg, C., C. & St. L. Ry. Co. v. Lynch, 69 Ohio St. 123, 68 N. E. 703, 63 L. R. A. 504, 100 Am. St. Rep. 658; Becker v. Louisville & N. R. Co., 110 Ky. 474, 61 S. W. 997, 53 L. R. A. 267, 96 Am. St. Rep. 459; Corbin v. City of Philadelphia, 195 Pa. 461, 45 A. 1070, 49 L. R. A. 715, 78 Am. St. Rep. 825; West Chicago St. R. Co. v. Liderman, 187 Ill. 463, 58 N. E. 367, 52 L. R. A. 655, 79 Am. St. Rep. 226; Linnehan v. Sampson, 126 Mass. 506, 30 Am. Rep. 692; Dixon v. New York, N. H. & H. R. Co., 207 Mass. 126, 92 N. E. 1030; Saylor v. Parsons et al., 122 Iowa, 679, 98 N. W. 500, 64 L. R. A. 542, 101 Am. St. Rep. 283; Railroad Co. v. Ridley, 114 Tenn. 727, 86 S. W. 606; State, to the use of Dove et al., v. Mayor and City Council of Baltimore, 141 Md. 344, 118 A. 753; Louisville & N. R. Co. v. Orr, 121 Ala. 489, 26 So. 35; Norris v. Atlantic C. L. R. Co., 152 N. C. 505, 67 S. E. 1017, 27 L. R. A. (N. S.) 1069; Gibney v. State, 137 N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690; Chattanooga Light & Power Co. v. Hodges, 109 Tenn. 331, 70 S. W. 616, 60 L. R. A. 459, 97 Am. St. Rep. 844; Bracey et al. v. Northwestern Improvement Co. et al., 41 Mont. 338, 109 P. 706, 137 Am. St. Rep. 738; Workman v. Lincoln T. & T. Co., 102 Neb. 191, 166 N. W. 550; City of Tipton et al. v. Racobs, 47 Ind. App. 681, 95 N. E. 265; Dillon v. Allegheny County Light Co., 179 Pa. 482, 36 A. 164.

Additional authorities on this proposition may be found in 19 A. L. R. 4.

In Eckert v. Railroad Co., supra, plaintiff's intestate was standing near the track of the defendant company. A small child, three

or four years old, was sitting upon the track, in front of an approaching train. Plaintiff's intestate, seeing the danger, ran to the child, seized it, and threw it clear of the track on the side opposite to that from which he came, but, continuing across the track himself, was struck by the locomotive, thrown down, and received injuries from which he died. The court said:

"Under the circumstances in which the deceased was placed, it was not wrongful in him to make every effort in his power to rescue the child, compatible with a reasonable regard for his own safety. It was his duty to exercise his judgment as to whether he could probably save the child without serious injury to himself. If, from the appearances, he believed that he could, it was not negligence to make an attempt so to do, although believing that possibly he might fail and receive an injury himself. *He had no time for deliberation. He must act instantly, if at all, as a moment's delay would have been fatal to the child.* The law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under such circumstances as to constitute rashness in the judgment of prudent persons." (Italics ours.)

In the Eckert Case, as stated by the court, plaintiff's intestate had no time for deliberation. He was called upon to act instantly. A moment's delay would have been fatal to the child. No such condition existed in the case at bar. Not only did plaintiff have time for reflection, but he did reflect. He folded a napkin about the wire. He tested the wire with his fingers. He then seized it and commenced to carry it across the street. The children, whom he sought to shield according to his own testimony, were 25 or 30 feet from the place where he picked up the wire. They were not approaching the wire. They were in no immediate danger of coming in contact with it. His act was to guard against future possible danger to the children, and not danger that was imminent, calling for immediate action, and giving no time for reflection or consideration.

The distinction between the instant case and the Eckert Case exists in practically all of the cases cited and relied upon by counsel for plaintiff. In Pennsylvania Co. v. Langendorf, supra, the plaintiff was struck by a locomotive while attempting to rescue a little child from being struck down by an approaching train. In that case the court said:

"The attendant circumstances must be regarded; the alarm, the excitement and confu-

sion usually present on such occasions, the uncertainty as to the proper move to be made, the promptness required, and the liability to mistake as to what is best to be done, suggests that much latitude of judgment should be allowed to those who are thus forced by the strongest dictates of humanity to decide and act in sudden emergencies. And the doctrine that one who, under those or similar circumstances, springs to the rescue of another, thereby encountering even great danger to himself, is guilty of negligence per se, is neither supported by principle nor authority."

In Railway Co. v. Lynch, supra, the plaintiff, a watchman at a railway crossing, sought to rescue a woman on the track from an approaching caboose. In Becker v. Railroad Co., supra, the plaintiff, a boy 12 or 14 years of age, was attempting to rescue a girl companion, who had fallen between the ties of a railroad bridge, from the danger of an approaching train. In Corbin v. Philadelphia, supra, the plaintiff's intestate was killed while attempting to rescue a boy who had been overcome by gas in a trench. In Railroad Co. v. Liderman, supra, a mother sought to rescue her three year old child from an approaching street car. In Linnehan v. Sampson, supra, the plaintiff sought to rescue a man who was being gored by a bull. In Dixon v. Railroad Co., supra, the plaintiff sought to rescue one who was in a position of peril from an approaching train. In Saylor v. Parsons, supra, the plaintiff sought to rescue a man from a falling wall by seizing a 2x4 about 7 feet long and rushing over and placing it against the wall to prevent it from falling. In Railroad Co. v. Ridley, supra, plaintiff's intestate sought to rescue a boy, about 8 years of age, from an approaching train.

In State v. Baltimore, supra, the facts were these:

"On a Sunday afternoon Edwin H. Dove, while taking a walk with a friend, noticed that an electric wire of appellee [defendant below] had fallen from a pole line on Pratt street, near Schroeder street. The wire had fallen in the form of a loop, and extended for some distance in and over the gutter, with the ends caught and entangled with the other overhanging wires, or in the branches of trees. The insulation was off of part of the wire, and at one point, where it rested in the gutter, it was sparkling and sputtering. A number of children were playing on the sidewalk in close proximity to the wire and were poking at it with sticks. At the time Dove undertook to push or throw the wire into the street the sparkling seems to have ceased.

Dove said, according to one of the witnesses, 'Them children might be in the way; you see it is not loaded, but if that wire comes down, tangles up, and falls on them, it might hurt them.' The point where the wire had been sparkling was 'about 10 feet or about 12 feet' from where Dove shoved the wire off. 'There were children right around the point where the wire was spluttering.' Dove waved them back, and undertook to push the wire away from them into the street, and was instantly electrocuted."

The court said:

"Whatever may be thought about the danger involved in this act, it cannot be said that one could know in advance that it would result in the death of the man attempting it. Certainly he did not anticipate that result, as there is nothing to indicate that he contemplated suicide. It did not follow, necessarily, that, because the insulation was defective at the point where the sparkling had been observed, the wire was unprotected at the point where Dove stood, 10 or 12 feet away. It was about 5 o'clock in the evening and growing dark. So that, while some of the witnesses noticed bad insulation in places, one might easily have failed to observe it. Of course, under ordinary circumstances, and with time for consideration, prudence would have dictated a careful examination of the wire before attempting to handle it with naked hands. But the conditions existing there appeared to Dove to require immediate action. He evidently was moved to do as he did by what he regarded as the necessity of the occasion, if the children were to be protected against a grave and impending danger to their lives. We think the question of contributory negligence should have been submitted to the jury."

In Railroad Co. v. Orr, supra, plaintiff's intestate sought to rescue a child from an approaching train. In Norris v. Railroad Co., supra, plaintiff sought to rescue a person from an approaching train. In Gibney v. State, supra, a father was attempting to rescue his child from drowning. In Chattanooga Co. v. Hodges, supra, an employer had so negligently constructed a building as to allow it to take fire. An employee in the building ran out to give the alarm, failing in which, and for the purpose of using a telephone, he ran back into the building and received severe burns, from which he died. In Bracey v. Improvement Co., supra, plaintiff's intestate met his death while attempting to rescue miners who had been overcome by gases while engaged in extinguishing fires in a burning mine.

From the foregoing it will be seen that the courts recognize the human instinct which prompts a person to go to the rescue of another in a position of imminent danger, likely to result in death or serious injury. They hold that, where one undertakes such a rescue under circumstances which do not admit of delay or time for reflection and consideration, he is not guilty of contributory negligence, unless his act is so rash and reckless that a man of ordinary prudence, in the light of the attending circumstances would not undertake the same.

In addition to the above cases, counsel for plaintiff cite two cases where the injury threatened was to property: Temple Electric Light Co. v. Halliburton (Tex. Civ. App.) 136 S. W. 585, and Leavenworth Coal Co. v. Ratchford, 5 Kan. App. 150, 48 P. 927. In the former case, a telephone wire had become crossed with an electric light wire, and at the point where the telephone wire entered the home of plaintiff's intestate it was sparking. Plaintiff's intestate undertook to cut the wire to prevent the house from catching on fire. In the latter case, plaintiff was attempting to remove a sparking electric light wire from his barn with a baseball bat, to prevent it from setting the barn on fire. In these two cases, the same principle was applied, except that the imminent danger was to property rather than to persons.

In Tipton v. Racobs, supra, a wire carrying a high voltage broke, and one end thereof fell into a shade tree along the sidewalk and hung suspended from a limb of a tree. The wind caused the limb to sway, swinging the wire backwards and forwards over the street and sidewalk, at times touching the ground at a point along the street near the home of plaintiff's intestate. Plaintiff's intestate, returning to his home, found the wire in this condition and his children in close proximity to the wire. For the purpose of removing the wire, and placing it beyond the reach of his children and others passing along the street, he took hold of the wire where it was apparently insulated, and received injuries causing his death. A motion was made to set aside the general verdict, upon the ground that it was irreconcilable with answers made by the jury to special interrogatories. Under the practice of Indiana, for the purpose of determining the question presented to the court, all of the facts alleged in the complaint were assumed to have been proven under the general verdict. The complaint, among other things alleged that plaintiff "took hold of said wire at the

point where it was apparently insulated, and where there was a substance resembling insulation; that the insulation of said wire, at said point where deceased took hold of the same, was in fact imperfect, and was not of proper thickness, material, or texture to resist the electricity in said wire and prevent the same from passing into the hand and body of said deceased."

The court in passing on the question said:

"Assuming the averments of the complaint to have been proved, he knew, or at least believed, that, so far as touch was concerned, the purpose of insulation was to make the wire safe, and that the insulated wire was a dead wire. H saw this broken, hanging wire suspended over the street and sidewalk, and saw the two uninsulated bare spots at and near the end toward the ground, and realized the danger to which children and others would be exposed by the touch of this loose, swinging wire at said exposed uninsulated portion, and believing that he could safely take hold of said wire at its insulated portions and remove it to a place of safety, and thereby prevent the risk of injury to his own children and other persons ignorant of the dangers of an exposed live wire, he took hold of the wire, at a point that to him appeared to be insulated and safe, to remove it, with the result alleged in the complaint. Taking the averments of this complaint as proved, the deceased was led to his death by the deceptive insulated appearance of the wire."

In the instant case, plaintiff did not rely upon the insulation, but he relied upon a device of his own making, the linen napkin.

In Dillon v. Light Co., supra, a policeman on duty on a rainy night attempted to remove with his mace from a street on his beat a broken wire hanging from a pole, knowing it to be charged with electricity. In passing on the question of contributory negligence the court said:

"The only question which we are called upon to consider is that of the alleged contributory negligence of the man who was killed. He knew that the wire was conducting a dangerous current of electricity. If he had no duty imposed upon him with respect to it, he had sufficient notice to make it negligence for him to interfere with it. He was, however, a policeman on duty at the time and upon the street on which the wire fell. It hung from a pole, the end resting on the ground near the foot crossing, and at intervals emitting sparks. It was a rainy night, and any contact with the wire meant injury. Even the touch of the frame of an umbrella of one passing to the wire would doubtless have caused the instant death of him who carried it. Will the law say to the policeman on duty under such circumstances that his sole or primary duty is to look out for his own safety? If it will not, then this question was one for the jury. It was told that if he voluntarily took the wire in his hand there could be no recovery. The testimony showed that he undertook to remove it with his mace—a method which, under ordinary circumstances, would have been perfectly safe. In some unexplained way he came into more dangerous contact with the wire."

It held the policeman was not guilty of contributory negligence.

Workman v. Lincoln T. & T. Co., supra, was an action to recover damages for negligence resulting in the death of George B. Workman. A wire broke and came into contact with an electric light wire carrying 4,400 volts. One end of the broken wire came within several feet of the ground in the street below. After that condition had existed from 9 o'clock in the morning until 11 o'clock at night, Workman came to the place of the accident. The broken wire was emitting sparks and was being guarded by a barber. The barber warned Workman not to touch it. Workman had been in the employ of the Lincoln Traction Company as a repairer of electric street cars and was experienced in the handling of wires carrying a high voltage. He attempted to handle the wire by means of a pair of pliers wrapped with a rubber taping for the purpose of insulating them. He seized the wire with the pliers, walked backwards, and pulled it after him several feet, when the wire touched a lantern he was carrying, knocked him down, and electrocuted him. The court held he was not guilty of contributory negligence as a matter of law. In this case there was a strong dissenting opinion. This case fairly supports the contention of plaintiff. In our judgment, however, it is unsound and out of line with the great weight of authority.

In the instant case, the plaintiff knew the wire was an electric light wire. He was attracted to the scene by the electric lights going out in his house. He saw it emitting a glow at the pole to which the other end was attached. He believed it to be dangerous to touch, because he gave as his reason for attempting to remove it his fear that the children might come in contact with it and be injured. He appreciated it was dangerous, because he undertook to test it with his fingers before taking it into his hands. He devised his own method of protection, to wit,

the linen napkin folded about the insulation. There was no impending danger to any other person. The circumstances required no hasty or ill-considered action. He had time for deliberation and reflection. He voluntarily seized a dangerous electric wire in his hands and undertook to carry it out of the street. Such being the undisputed facts, we cannot say that the learned District Judge erred in holding that plaintiff was guilty of contributory negligence as a matter of law, precluding his recovery.

The judgment is therefore affirmed.