## Gibson's Administrator v. Ohio Valley Electric Railway Company, et al.

(Decided March 16, 1926.)

### Appeal from Boyd Circuit Court.

Master and Servant—Mine Employe Attempting to Remove Electric Wires from Mine Track, Despite Employer's Protest, Held Contributorily Negligent.—Mine employe attempting, over employer's protest, to remove electric wires from mine track 200 yards from mine's mouth, held not to have acted in sudden emergency, but to have assumed danger, and was contributorily negligent as

matter of law, regardless of whether he took hold of wire voluntarily or was struck by it when he picked up brush holding it.

ALLEN D. COLE, S. S. WILLIS and R. D. WILSON for appellant.

GEORGE B. MARTIN, JOHN L. SMITH and A. J. THOMAS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

The Equitable Trust Company, as administrator of Frank Gibson, deceased, brought this suit against the Ohio Valley Electric Railway Company, Boyd County Electric Company and R. J. Thomas to recover damages for the death of its intestate. At the conclusion of the evidence the trial court directed a verdict in favor of the defendants, and plaintiff has appealed.

The facts are these: The main high tension wires of the Boyd County Electric Company are on the highway between Catlettsburg and Ashland. Two wires carrying 2,300 volts run from the highway up Horse branch which is located about midway between the two towns. They serve a few houses and some small coal mines on the branch. A few hundred yards up the branch were two coal mines which were operated by R. J. Thomas. Only the larger of the two mines was equipped with electricity. Prior to September 5, 1921, the larger mine was worked out and abandoned by Thomas, and he had notified the electric company to remove its wires. It took down the transformer at the mouth of the mine, cut the wires leading into the mine and strung them high up on a pole. Its primary wires carrying 2,300 volts were left for the purpose of serving other customers on the branch. Thomas employed Gibson, who was an experienced miner, to clean out the small mine and mine some coal from it. On the day of the accident he was using a mule and a mine car to haul out the dirt and rock from the small mine and dump it into the branch. Leading into the mine were steel rails on which the mine car ran. The traveled part of the roadway was across the branch from the two small mines and about 200 yards distant. On the afternoon of September 5, 1921, a severe rain and wind storm took place while Gibson was cleaning out the small mine. During the storm an old beech tree that stood a few feet away fell upon the electric wires and caused them to fall to the ground upon the rails leading into the mine. Soon thereafter Gibson, who it seems had received some kind

of a shock, came out of the mine to find out what the trouble was. May, who was about 90 feet away, told him that the wires were down and spitting fire, and to be careful. Gibson told him of being shocked in the mine and that he had come out to see what the trouble was. May said that he was on his way to telephone the electric company that the wires were down and to send men to put them up. Gibson replied that he need not do that as he knew how to handle the wires. May told him not to do it, and begged him not to touch the wires. Gibson then picked up a dead wire and wrapped it around a stump. After he had finished wiping the mud from his hands he began removing some dead limbs. While doing this he caught hold of the live wire and received injuries which resulted in his death. There was further evidence that in a stable not far away were some hay and dynamite; that the electric wires were not properly insulated; and that the tree that was blown across the wires was old and rotten.

Appellant insists that the case should have gone to the jury for the following reasons: The electric company was negligent not only in failing properly to insulate its wires, but in permitting to stand near its wires a decayed tree that was likely to be blown down and across the wires at any time; that because of the interference with his work in the mine, and of the danger growing out of the presence of hay and dynamite nearby, decedent was called upon to act in an emergency for the protection of his master's property, and was not therefore chargeable with a mistake of judgment; that it is a fair deduction from the evidence that he was picking up the brush at the time he was killed and did not voluntarily take hold of the wire, but that the wire flew up and struck him in the face. In view of the conclusion of the court we need not discuss the question of negligence on the part of appellees. Decedent was not placed in a position of sudden peril and no emergency calling for immediate action on his part existed. The place where the wires were down was several yards from the mouth of the mine where he was at work. He approached the wires with deliberation. He told May that he need not call an electrician as he knew how to handle the wires. May told him that the wires were alive and begged him not to handle them. With this knowledge he undertook to remove the wires from the track. He did this over the protest of May, and there was no duty requiring him to act. It is immaterial

whether he voluntarily caught hold of the wire or was removing the brush when the wire flew up. In either event, the case is one where he voluntarily exposed himself to a known and obvious danger, and there is no escape from the conclusion that he not only assumed the risk, but was guilty of contributory negligence as a matter of law. City of Owensboro v. Winfrey, 191 Ky. 106, 229 S. W. 131.

Judgment affirmed.