[Sac. No. 1490.   Department Two.—September 18, 1907.]

## ELMA HODGES SHADE et al., Respondents, v. BAY COUNTIES POWER COMPANY, Appellant.

NEGLIGENCE—UNDISPUTED FACTS SHOWING CONTRIBUTORY NEGLIGENCE.—In an action to recover damages for personal injuries alleged to have been the result of the negligence of the defendant, in which the defense of contributory negligence is interposed, if the facts are clear and undisputed, and no other inference than that of contributory negligence can be drawn from them, the court is not required to submit that question to the jury, but may itself make the inference.

ID.—INTERFERENCE WITH ELECTRIC WIRES.—A man of mature years, of good intelligence, having a knowledge of the danger lurking in wires carrying a large voltage of electricity, although not an expert electrician, is guilty of contributory negligence, in unnecessarily, heedlessly, and recklessly approaching and endeavoring to restrain such a wire which he found detached from a pole and hanging by the side of a public road.

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. Henry C. Gesford, Judge presiding.

The facts are stated in the opinion of the court.

G. A. Lamont, Myrick & Deering, Myrick, Deering & Gibbons, Garret W. McEnerney, and William B. Bosley, for Appellant.

Frank R. Devlin, for Respondents.

McFARLAND, J.—This action was brought jointly by the parents and widow of John Chester Shade, deceased, to recover damages for the death of said deceased, alleged to have been caused by the negligence of the defendant. The plaintiffs are the only heirs of the deceased. The jury returned a verdict for plaintiff, fixing the damages at eight thousand dollars, for which amount judgment was rendered. From the judgment and from an order denying defendant's motion for a new trial the defendant appeals.

Defendant makes a number of contentions for a reversal, but under our view of the case only one of these contentions need be specially considered,—namely, that the facts show as a matter of law that the deceased was guilty of contributory negligence, which was the proximate cause of his death, and therefore defendant's motion for a new trial should have been granted, etc. We think that this contention must be sustained.

With respect to the principle of contributory negligence, it is well established "that where the facts are clear and undisputed, and where no other inference than that of negligence can be drawn from them, the court is not required to submit the question to the jury, but may itself make the inference." (*Studer* v. *Southern Pacific Co.*, 121 Cal. 400, [66 Am. St. Rep. 39, 53 Pac. 942].) In Thompson on Negligence (vol. 1, sec. 1249) the rule, supported by ample authority, is stated to be that "the traveler cannot recover if he could have avoided the accident by the exercise of reasonable care on his part." (See, also, *Flemming* v. *Western Pacific R. R. Co.*, 49 Cal. 253.)

In the case at bar the facts were these: At the time of the occurrences out of which this litigation arose the defendant

was the owner of an electric-power system and carried electricity by means of poles and wires along and over the side of the American Cañon public road in Solano County. On the morning of July 4, 1904, the deceased, Chester Shade, and seven other persons were traveling in a three-seated two-horse wagon along said road, and when approaching a certain bridge they saw that a few yards on the other side of the bridge one of the electric wires of defendant's system had become detached from a pole and was hanging down over the side of the road a few feet from the ground. The wagon was stopped on or about the middle of the bridge, which was about forty-one feet long, so that when the wagon was stopped it and its occupants were about thirty feet away from the hanging wire. The deceased and one of the parties, named Hodges, got out of the wagon and went a short distance towards the hanging wire. The deceased then returned to the wagon and took from it a small rope or cord, about a quarter of an inch thick and about four feet long, and started with it towards the wire. Another party, Forbes Brown, said to him, "Don't touch the wire, Chester, whatever you do," and the deceased replied, "There is no danger of my doing that; I would not think of doing that." The deceased and Hodges then went near to the wire, which had attached to it an instrument in the form of an insulator. It does not appear to what extent this insulator was intended to be a protection to appellant's employees even when the wires were in proper position on the poles. It appears that it was not a protection against a large voltage, which sometimes passed through the wires. It appears to have been fastened to the wire on one side only, so that it was more dangerous to touch it at some points than at others. Moreover, it had been broken by the fall, and pieces of it were lying on the ground near the pole. The deceased approached the hanging wire quite closely, for he threw the end of the short cord over the insulator and fastened it there by a knot. He then reached toward Hodges for a flagpole which the latter had, and to which he intended to tie the cord, when he received a charge of electricity, which caused his death a day or two afterwards.

The deceased was not a backwoodsman who had never heard of electrical plants and the danger which lurks in live wires—if, indeed, such a person could be found in California. He had been born and had always lived in the city of Vallejo, where,

as in nearly every American city, electricity is used, was a business man, twenty-eight years old, and of good intelligence. He knew the danger of live wires, but was not an expert electrician. He had not been placed by the negligence of the appellant in a position of peril from which he must by some means extricate himself, so that he might have been excused if he had not used the best judgment in trying to avoid danger. He was in no danger whatever. It appears probable from the evidence that he and his party could have driven past without any risk, as the distance from the hanging wire to the edge of the road was, at the narrowest point, nine feet and nine inches. However, it was not necessary for them to drive past; they could have turned back, and, if they could not have reached their original destination by some other road, they could have had their picnic at some other place; and if they had suffered any serious wrong by the obstruction they could have recovered damages. They were not even tempted by any business interests to incur the danger of trying to remove the wire, nor were they impelled by any sense of duty to do so. They were traveling merely for the purpose of pleasure. Exactly how near the deceased went to the wire does not appear from the testimony of the witnesses who were present at the time. One of them testified that he could not have been closer to the wire than fourteen inches. It appears quite probable from the testimony of the expert electricians that the deceased did not receive the shock which killed him through the cord which he held in his hand; but that some part of his person or clothing came in contact with the wire, or was so close to the wire that the electricity "sparked" or "jumped" from the wire to his person. While standing so near the wire and being employed in trying to adjust the cord and pole he might readily have inadvertently moved nearer to the wire. At all events, it is clear that he unnecessarily, heedlessly, and recklessly placed himself in a most dangerous position, which resulted in his receiving the deadly shock. "No other inference than that of negligence can be drawn from" his conduct. It was careless and negligent in the extreme sense, and is fitly characterized by the old phrase "foolhardy." Our opinion is that he was guilty, as a matter of law, of contributory negligence, and that therefore the nonsuit should have been granted, and the verdict was unwarranted.

The judgment and order appealed from are reversed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in Bank, and filed the following opinion on the 19th of October, 1907:—

BEATTY, C. J.—I dissent from the order denying a rehearing. The opinion of the court omits some facts which I deem highly material to the question of contributory negligence. Shade and his companions, traveling on a public road, on a descending grade, at a brisk pace, suddenly became aware of the suspended wire, barely in time to stop their carriage on the bridge. They were not at that point thirty feet distant from the wire. The insulator attached to the wire was thirty feet distant, but the wire itself extended alongside of the carriage over one side of the bridge, and they were in a position where it was impossible to turn back except by doing what they finally did,—that is, by unhitching the horses and backing the carriage by hand to a point on the road where there was a sufficient space to enable them to turn it. In this way, and in this way only, can it be said that they could have turned back. And the evidence does not, in my opinion, make it appear probable that they could have driven past the obstruction without risk. The only evidence on this point was the testimony of one of defendant's witnesses,—an expert electrician,—who, on his cross-examination, admitted that he would not himself have taken the risk of driving between the fence and the wire when the current was on. The case, then, as it appears to me, is that Shade and his party, without any fault of their own, found themselves in a position where it was difficult to turn back and perilous to go forward. They were on a public road in the exercise of their undoubted right. Was it then such contributory negligence on the part of Shade as necessarily precludes a recovery to attempt in a cautious and prudent manner to remove the obstruction?

It is true, as stated in the opinion of the court, that he was not a backwoodsman who knew nothing of electric plants and the danger which lurks in live wires. On the contrary, he was

perfectly aware of the danger of coming in contact with the wire, and he was assisted in all that he did by his father-in-law, Mr. Hodges, who was an engineer in the supply department at Mare Island, and in actual charge of an electric-generating plant there. They both knew of the danger of touching the wire, or coming in close proximity to it, and, according to all the evidence, they carefully avoided those dangers. Shade took a cord fifty-three inches long, and, holding it by the two ends, threw the loop over the skirt of the insulator. Then, with both hands held about two feet from the wire, he tied a knot in one end, so as to form a slip noose inclosing the other end, and then by drawing out the free end he slipped the noose down upon the insulator without getting any nearer to the wire. At this moment, while he was holding the cord with one hand and reaching with the other for the stick which he intended to tie to the cord, the explosion occurred, fatally injuring him and knocking Hodges down and rolling him over and over.

The evidence is clear that the current did not pass through the cord, and the circumstance that the insulator was slightly broken is of no possible significance. It was one of those large porcelain affairs, fourteen inches high, used on the poles of high transmission lines. It had been tested for one hundred and twenty thousand volts and the line was carrying only fifty thousand. It does not appear what the break in the insulator was, but it does appear that it was fastened to the wire by the upper portion, and hung down under the wire in its proper position, so that a cord thrown over the skirt would be at more than sparking or arcing distance from the wire. In short, the testimony of all the witnesses—defendant's as well as plaintiff's—shows conclusively that the current did not reach Shade through the cord or insulator. But defendant's expert witnesses testify that he must have come in actual contact with the wire, or within less than two inches of it. The eye-witnesses of the accident testify that he was never within less than fourteen inches of the wire, and there is no doubt that he was consciously and carefully avoiding a near approach to it. In deciding that he must have touched the wire, the court is obliged to disregard the testimony of the eye-witnesses in favor of the theory that he could not otherwise have been injured. Can we lay this down as a proposition of law? Is

it competent for this court to say that a sudden and fatal explosion may not have occurred in consequence of some unusual condition or combination of causes which no one could reasonably have anticipated? If not, and if Shade was using all due precaution for the safe removal of a dangerous obstruction to a highway along which he desired to pass for a lawful purpose, I do not think he is chargeable with contributory negligence. For myself I do not profess to know enough about the possible eccentricities of electric force to deny the possibility of the accident having been due to a cause which no one could have reasonably anticipated, and the evidence on the part of plaintiffs shows that Shade in attempting to remove the obstruction took every precaution to avoid the only danger that is ordinarily involved in such operations.

It is to be observed that according to the authorities cited in the opinion of the court (*Studer* v. *Southern Pacific Co.*, 121 Cal. 400, [66 Am. St. Rep. 39, 53 Pac. 942], and *Flemming* v. *Western Pacific R. R. Co.*, 49 Cal. 253, it is only when the evidence introduced by the plaintiff in chief shows clearly and without conflict that the person injured has been guilty of culpable negligence directly contributing to the injury complained of that this court can set aside the verdict of a jury upon that ground. Here several of the matters stated in the opinion of the court rest wholly and entirely upon evidence introduced by the defense. There was nothing in the evidence introduced by the plaintiff tending to show that the insulator was broken, that plaintiffs' party had room to pass the obstruction without risk, or that Shade could not have received the injury without coming in contact with the wire (unless that is a *datum* of science of which courts must take judicial knowledge). On the contrary, the evidence for the plaintiffs is clear that he was never within arcing distance of the wire.

I can conceive of no principle upon which the decision of the court can be sustained except this: that where a person lawfully passing along a public road encounters an obstacle which may possibly injure him if he attempts to pass it or remove it, the mere fact that he is injured in the attempt to do one or the other is proof conclusive that he has been guilty of culpable negligence. This was in effect the sort of argument urged upon this court in *Robinson* v. *Western Pacific R. R. Co.*, 48 Cal. 409. There a woman passing a street of

Stockton attempted to cross a railroad track behind a train of cars, which suddenly started back and injured her. In substance the argument was, if she had kept off of the track she would never have been injured. Here the argument seems to be that if Shade had not attempted to remove the obstruction he never would have been injured, and no allowance is made for the ample precautions he took (according to the evidence in chief) to avoid the only danger ordinarily involved in the attempt. I cannot concur in a view which limits so strictly the rights of persons lawfully using the public roads.