McNAMEE v. WESTERN UNION TELEGRAPH CO. et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

ELECTRICITY (§ 18*)—ACTION—EVIDENCE—CONTRIBUTORY NEGLIGENCE.

> Decedent, killed by a fallen electric wire on a highway, *held* negligent, precluding recovery for his death, though the owner of the wire was negligent in permitting its fall.

> [Ed. Note.—For other cases, see Electricity, Cent. Dig. § 10; Dec. Dig. § 18.*]

Appeal from Trial Term, Queens County.

Action by Elizabeth McNamee, administratrix of James McNamee, against the Western Union Telegraph Company and another. From a judgment for plaintiff, and an order denying a new trial, the mentioned defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, THOMAS, RICH, and CARR, JJ.

Rush Taggart, for appellant.
Martin T. Manton, for respondent.

WOODWARD, J. Plaintiff's intestate was killed by an electric shock communicated to him through a wire of the defendant, which fell upon Clark avenue, Far Rockaway, crossing a high voltage wire of the Queen's Borough Gas & Electric Light Company, and the story of the accident is briefly as follows:

An express wagon of the Long Island Railroad Company was being driven along Clark avenue by one Cronin in the early evening of a rainy night, when the horse came in contact with a wire of the defendant, which had crossed the high voltage wire mentioned above. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

horse was knocked down, and the wagon, a rubber-topped affair, passed under the wire, which fell to the street some three feet in the rear; the horse having slid forward after the contact. Cronin was accompanied by a helper, who appears to have made an outcry for help and then to have run away from the scene of the accident. One McNamee, plaintiff's intestate, responded to the call for help, and assisted Cronin in unfastening some of the harness from the fallen horse. After doing this, and before the work of freeing the horse was completed, McNamee walked to the rear of the wagon, where the undisputed testimony shows that the fallen wire was sputtering and sparking, took hold of the wire with a handkerchief in his hand, and walked toward the curb, where he fell dead from the shock of electricity passing through the wire.

The plaintiff's witness Cronin testifies that he did not see any one around until after McNamee was killed; but it was stipulated upon the trial that three Sisters of Charity, who occupied a cottage near at hand, were present, and that, if called, they would testify that they came out near the fence after the horse was felled, and saw Mr. McNamee assist in unhitching the horse; that he then went in back of the wagon and took hold of the wire, handkerchief in hand, and walked to the sidewalk and fell; that before he took hold of the wire some bystander warned him not to touch it, and that he made some reply; so that the purely negative testimony of Cronin, that he saw no one around until after McNamee was killed, is of no probative force, and cannot be permitted to overcome the positive testimony of one Wasson, who testifies that he was present immediately after the horse fell; that he saw the horse fall, and ran to the scene, and that the Sisters of Charity were there, and that he arrived an instant before McNamee arrived; that McNamee assisted in unhitching the horse, and then came around and asked the group which had accumulated if any one had a rubber glove or a piece of rubber; that the witness answered that he had not, and that McNamee then took a handkerchief from his pocket and walked toward the wire; that the witness then spoke to him, and told him that he should not touch the wire, that it would kill him; that he thinks others called to him; that the witness called loudly to him, so loudly that McNamee could hear him easily; and that the latter made some reply, but kept on toward the wire, which he took hold of and instantly fell.

This witness is entirely undisputed. He is corroborated by the stipulation above referred to, and by the plaintiff's own witness Cronin, except in so far as the latter says that there were no persons around until after the death of McNamee, though he admits that he was so much excited that he could not tell whether any one assisted him to hitch his horse, or whether Wasson helped him or not. Cronin says that the wire was flashing and sputtering all the time that McNamee was approaching it. It appears, from the request of McNamee for a rubber glove, that he knew of the danger to be apprehended; yet, with no other protection than a handkerchief, he deliberately attempted to handle a live wire, and the defendant has been adjudged guilty of negligence, and is called upon to pay a substantial judgment.

We are clearly of the opinion that McNamee, as a matter of law,

was guilty of contributory negligence: No one was in immediate danger. He knew that the current was strong enough to knock down a horse. He must have observed the flashing and sputtering of the wire .as he approached it; and, knowing that it required a rubber glove to handle the wire, he deliberately took hold of the same and was killed. Clearly the defendant, assuming its negligence in permitting its wire to fall, was not the proximate cause of this death. There was no occasion for McNamee to undertake to remove this wire. No one was presently menaced by it. He was warned, and apparently knew of the danger, and if he chose to walk deliberately from a place of safety, and to affirmatively take the action which brought about his death, it is not just that the defendant should be charged with the liability for his death.

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the ·event. All concur.